**EXHIBIT C**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

---

YOSSEF KAHLON,

                    Plaintiff,

          -against-

COUNTY OF NASSAU, JOHN/JANE DOE Members
of the Nassau County District Attorney's Office,
CÉLINE BOULBEN, and JOHN/JANES DOE
"#METOO" ORGANIZATION(S)

                    Defendants.

---

CÉLINE BOULBEN,

                    Counterclaim-Plaintiff,

          -against-

YOSSEF KHALON,

                    Counterclaim-Defendant.

---

Index No. 603545/2024

## DEFENDANT CÉLINE BOULBEN'S ANSWER, AFFIRMATIVE DEFENSES, DEMAND FOR JURY TRIAL, AND COUNTERCLAIM

Defendant/Counterclaim-Plaintiff Céline Boulben, by and through her attorneys, Crumiller P.C., respectfully submits this Answer, Affirmative Defenses, and Counterclaims to the Complaint of Plaintiff/Counterclaim-Defendant Yossef Kahlon. Boulben denies plaintiff's allegations and incorporates this affirmation into each paragraph set forth below.

### ANSWERS TO PLAINTIFF'S SPECIFIC ALLEGATIONS

### INTRODUCTION

1.      Boulben denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1 of the Complaint.

2.      Boulben denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 2 of the Complaint.

1

3.      Boulben denies the allegations contained in Paragraph 3 except admits she met Kahlon

on Seeking.com.

4.      Boulben denies knowledge or information sufficient to form a belief as to the truth of the

allegations contained in Paragraph 4 of the Complaint. Boulben further avers that the allegations

regarding conspiracy and the destruction of Kahlon's reputation contained in Paragraph 4 set

forth legal conclusions to which no response is required.

## MUNICIPAL LAW OBLIGATIONS

5.      Boulben admits to the allegations contained in Paragraph 5 of the Complaint.

6.      Boulben denies knowledge and information sufficient to form a belief as to the truth of

the allegations contained in Paragraph 6.

7.      Boulben denies knowledge and information sufficient to form a belief as to the truth of

the allegations contained in Paragraph 7.

## PARTIES

8.      Boulben denies knowledge and information sufficient to form a belief as to

whether or not Defendant Kahlon is a resident of Nassau County. Boulben further avers that the

allegations of constitutional violations and tortious conduct that form the basis of this action set

forth legal conclusions to which no response is required.

9.      Boulben denies knowledge and information sufficient to form a belief as to the

allegations in Paragraph 9 of the Complaint except admits Defendant County of Nassau is a

municipal entity in the State of New York.

10.      Boulben denies knowledge and information sufficient to form a belief as to the

allegations in Paragraph 10 of the Complaint.

11.      Boulben admits the allegations in Paragraph 11 of the Complaint.

2

Case 2:24-cv-02439-BMC   Document 1-4   Filed 04/01/24   Page 4 of 39 PageID #: 38

## STATEMENT OF FACTS

12.     Boulben admits to the allegations contained in Paragraph 12 of the

Complaint.

13.     Boulben denies knowledge or information sufficient to form a belief as to the truth of the

allegations contained in Paragraph 13 of the Complaint.

14.     Boulben admits to the allegations contained in Paragraph 14 of the Complaint.

15.     Boulben denies the allegations in Paragraph 15 of the Complaint except admits she

initiated contact by sending Kahlon a message via the Seeking.com website's messaging

platform.

16.     Boulben admits the allegations in Paragraph 16 of the Complaint except denies the

characterization that she "selected" the pick-up location.

17.     Boulben admits to the allegations contained in Paragraph 17 of the Complaint.

18.     Boulben admits to the allegations contained in Paragraph 18 of the Complaint, except

denies the characterization that they "laughed," "had drinks," and "after a couple of hours agreed

to go to the third level."

19.     Boulben denies the allegations contained in Paragraph 19 of the Complaint.

20.     Boulben denies knowledge or information sufficient to form a belief as to the truth of the

allegations contained in Paragraph 20 of the Complaint. Boulben further avers that the allegation

set forth in Paragraph 20 of the Complaint sets forth a legal conclusion to which no response is

required.

21.     Boulben admits the allegations contained in Paragraph 21 except denies that she "asked

[Kahlon] how much she was going to get paid for her time" and denies that she began to undress

and sat on the edge of his bed before he made that statement.

3

INDEX NO. 603545/2024

RECEIVED NYSCEF: 04/01/2024

Case 2:24-cv-02439-BMC    Document 1-4    Filed 04/01/24    Page 5 of 39 PageID #: 39

22.     Boulben admits the allegations contained in Paragraph 22 of the Complaint except denies that Kahlon intimated that he was interested in the nature of the sexual activities or that she "jokingly acknowledged his interest in such activities, and said she was willing to explore them with him."

23.     Boulben denies the allegations contained in Paragraph 23 of the Complaint. Boulben further avers that the allegations set forth in Paragraph 23 of the Complaint set forth legal conclusions to which no response is required.

24.     Boulben denies the allegations contained in Paragraph 24 of the Complaint. Boulben further avers that the allegations set forth in Paragraph 24 of the Complaint set forth legal conclusions to which no response is required.

25.     Boulben denies the allegations contained in Paragraph 25 of the Complaint except admits that she took a shower at some point later in time in the bathroom on the lower level of his home. Boulben further avers that the allegations set forth in Paragraph 25 set forth legal conclusions to which no response is required.

26.     Boulben admits to the allegations contained in Paragraph 26 of the Complaint except denies the characterization that Kahlon "went to a different floor of his home." Instead, Boulben avers Kahlon left the lower level and went upstairs.

27.     Boulben denies knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 27 of the Complaint. Boulben further avers that the allegations contained in Paragraph 27 set forth legal conclusions to which no response is required.

28.     Boulben denies the allegations contained in Paragraph 28 of the Complaint. Boulben further avers that the allegations contained in Paragraph 28 set forth legal conclusions to which no response is required.

29.     Boulben denies the allegations contained in Paragraph 29 of the Complaint. Boulben further avers that the allegations contained in Paragraph 29 set forth legal conclusions to which no response is required.

30.     Boulben admits to the allegations contained in Paragraph 30 of the Complaint but denies the characterization "after all sexual activity had come to an end."

31.     Boulben admits to the allegations contained in Paragraph 31.

32.     Boulben admits that she took the money that Kahlon handed her and counted it but denies "complaining" or being disappointed by his "lack of generosity."

33.     Boulben denies the allegations contained in Paragraph 33 of the Complaint but admits that Kahlon offered to make an additional payment.

34.     Boulben admits the allegations contained in Paragraph 34 of the Complaint, except denies that Boulben, not Kahlon, had the idea that Kahlon make additional payments to Boulben via bank transfer.

35.     Boulben denies that Kahlon kissed her on the cheek or that she was "safely" in an Uber. Boulben denies knowledge or information sufficient to form a belief as to what Kahlon did after she entered the Uber. Boulben denies knowledge or information sufficient to form a belief as to the remainder of the allegations contained in Paragraph 35 of the Complaint.

36.     Boulben denies the allegations contained in Paragraph 37 of the Complaint, except admits that she did text people in the Uber ride back to Manhattan.

Case 2:24-cv-02439-BMC Document 1-4 Filed 04/01/24 Page 7 of 39 PageID #: 41

37.     Boulben admits that she texted a female designated "safety" friend who knew of her whereabouts. Boulben denies that her friend was aware of the nature of her activities with Mr. Kahlon. Defendant Boulben further denies the implication that she provided this friend with no hint of having any kind of problem with Kahlon.

38.     Boulben admits that she complained to various friends about Kahlon and denies that the basis of her complaints was limited to the length of time spent with Kahlon and/or the inadequacy of his compensation.

39.     Boulben admits the allegations contained in Paragraph 39 of the Complaint but denies the implication that Boulben's friends were incorrect in any way to tell Boulben that she was a victim of a crime or to insist that she go to the hospital and to the police to report that she had been the victim of a crime.

40.     Boulben denies the allegations contained in Paragraph 40 of the Complaint except admits that her friend insisted that she seek emergency medical attention and admits she did not specifically use the word "rape" when describing her sexual assault.

41.     Boulben denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 41 of the Complaint.

42.     Boulben admits to the allegations contained in Paragraph 42 of the Complaint except denies knowledge sufficient to form a belief as to whether the interview was recorded at the time.

43.     Boulben admits the allegations contained in Paragraph 43 of the Complaint but denies the implication that this encompasses all of the complaints she made about Kahlon to Detective Salazar in the Salazar Interview.

6

Case 2:24-cv-02439-BMC   Document 1-4   Filed 04/01/24   Page 8 of 39 PageID #: 42

44.     Boulben denies the allegations contained in Paragraph 44 of the Complaint. Boulben further avers that Paragraph 45 sets forth legal conclusions to which no response is required.

45.     Boulben denies the allegations contained in Paragraph 45 of the Complaint. Boulben further avers that Paragraph 45 sets forth legal conclusions to which no response is required.

46.     Boulben admits to the allegations contained in Paragraph 46 of the Complaint.

47.     Boulben admits to the allegations contained in Paragraph 47 of the Complaint.

48.     Boulben denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 48 of the Complaint. Boulben further avers that Paragraph 48 sets forth legal conclusions to which no response is required.

49.     Boulben denies the allegations contained in Paragraph 49 of the Complaint except admits she contacted various victim's rights advocacy organizations.

50.     Boulben denies the allegations contained in Paragraph 50 of the Complaint except admits she was interviewed Detective Aileen Newbold.

51.     Boulben denies the allegations contained in Paragraph 51 of the Complaint.

52.     Boulben denies knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 52 of the Complaint.

53.     Boulben denies knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 53 of the Complaint.

54.     Boulben denies the allegations contained in Paragraph 54 of the Complaint. Boulben avers that the allegations contained in Paragraph 54 of the Complaint set forth legal conclusions that do not require a response.

7

55.     Boulben denies knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 55 of the Complaint. Boulben further avers that the allegations contained in Paragraph 55 of the Complaint set forth legal conclusions to which no response is required.

56.     Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 56 of the Complaint. Boulben further avers that the allegations contained in Paragraph 56 of the Complaint set forth legal conclusions to which no response is required.

57.     Boulben denies the allegations contained in Paragraph 57 of the Complaint. Boulben further avers that the allegations contained in Paragraph 57 of the Complaint set forth legal conclusions to which no response is required.

58.      Boulben denies the allegations contained in Paragraph 58 of the Complaint. Boulben avers that the allegations contained in Paragraph 58 of the Complaint set forth legal conclusions to which no response is required.

59.     Boulben admits to the allegations contained in Paragraph 59 of the Complaint but denies knowledge or information sufficient to form a belief as to the allegation that the Nassau District Attorney's Office "inexplicably waited two months to make an attempt to arrest Mr. Kahlon."

60.     Boulben admits to the allegations contained in Paragraph 60 of the Complaint except denies knowledge or information sufficient to form a belief as to the truth of the allegation that the Nassau District Attorney's Office had no additional complaints against Kahlon or reason to believe that Kahlon victimized other people.

61.     Boulben admits to the allegations contained in Paragraph 61 of the Complaint.

INDEX NO. 603545/2024
RECEIVED NYSCEF: 04/01/2024

62.     Boulben denies knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 62 of the Complaint. Boulben further avers that Paragraph 62 of the Complaint sets forth legal conclusions to which no response is required.

63.     Boulben denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 63 of the Complaint.

64.     Boulben denies knowledge and information sufficient to form a belief as to the allegations contained in Paragraph 64 of the Complaint. Boulben further avers that Paragraph 64 of the Complaint sets forth legal conclusions to which no response is required.

65.     Boulben denies the allegations contained in Paragraph 65 of the Complaint.

66.     Boulben denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 66 of the Complaint.

67.     Boulben denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 67 of the Complaint.

68.     Boulben denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 68 of the Complaint.

69.     Boulben denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 69 of the Complaint.

70.     Boulben denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 70 of the Complaint.

71.     Boulben denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 71 of the Complaint.

72.     Boulben denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 72 of the Complaint.

9

Case 2:24-cv-02439-BMC    Document 1-4    Filed 04/01/24    Page 11 of 39 PageID #: 45

73.     Boulben denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 73 of the Complaint.

74.     Boulben denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 74 of the Complaint.

75.     Boulben denies knowledge or information sufficient to form a belief as to the truth the allegations contained in Paragraph 75 of the Complaint. Boulben further avers that the allegations in Paragraph 75 set forth legal conclusions to which no response is required.

## FIRST CAUSE OF ACTION

76.     In response to Paragraph 76 of the Complaint, Boulben repeats and realleges her responses to Paragraphs 1-75 of the Complaint as if fully set forth herein.

77.     Boulben denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 77 of the Complaint.

78.     Boulben denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 78 of the Complaint.

79.     Boulben denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 79 of the Complaint.

80.     Boulben denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 80 of the Complaint.

81.     Boulben denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 81 of the Complaint.

82.     Boulben denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 82 of the Complaint.

Case 2:24-cv-02439-BMC    Document 1-4    Filed 04/01/24    Page 12 of 39 PageID #: 46

83.     Boulben denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 83 of the Complaint.

84.     Boulben denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 84 of the Complaint.

85.     Boulben denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 85 of the Complaint.

## SECOND CAUSE OF ACTION

86.     In response to Paragraph 86 of the Complaint, Boulben repeats and realleges her responses to Paragraphs 1-85.

87.     Boulben denies knowledge or information sufficient to form a belief as to the truth the of allegations contained in Paragraph 87 of the Complaint.

88.     Boulben denies knowledge or information sufficient to form a belief as to the truth the of allegations contained in Paragraph 88 of the Complaint.

89.     Boulben denies the allegations contained in Paragraph 89 of the Complaint.

90.     Boulben denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 90 of the Complaint.

91.     Boulben denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 91 of the Complaint.

92.     Boulben denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 92 of the Complaint.

93.     Boulben denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 93 of the Complaint.

94.     Boulben denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 94 of the Complaint.

95.     Boulben denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 95 of the Complaint.

96.     Boulben denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 96 of the Complaint.

## THIRD CAUSE OF ACTION

97.     In response to Paragraph 97 of the Complaint, Boulben repeats and realleges her responses to Paragraphs 1-96.

98.     Boulben denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 98 of the Complaint.

99.     Boulben denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 99 of the Complaint.

100.    Boulben denies the allegations contained in Paragraph 100 of the Complaint.

101.    Boulben denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 101 of the Complaint.

102.     Boulben denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 102 of the Complaint.

103.    Boulben denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 103 of the Complaint.

104.    Boulben denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 104 of the Complaint.

12

105.    Boulben denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 105 of the Complaint.

106.    Boulben denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 106 of the Complaint.

**FOURTH CAUSE OF ACTION**

107.    In response to Paragraph 107 of the Complaint, Boulben repeats and realleges her responses to Paragraphs 1-106.

108.    Boulben denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 108 of the Complaint.

109.    Boulben denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 109 of the Complaint.

110.    Boulben denies the allegations contained in Paragraph 110 of the Complaint.

111.    Boulben denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 111 of the Complaint.

112.    Boulben denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 112 of the Complaint.

113.    Boulben denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 113 of the Complaint.

114.    Boulben denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 114 of the Complaint.

115.    Boulben denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 115 of the Complaint.

## **FIFTH CAUSE OF ACTION**

116.      In response to Paragraph 116 of the Complaint, Boulben repeats and realleges her

responses to Paragraphs 1-115.

117.      Boulben denies knowledge or information sufficient to form a belief as to the truth of the

allegations contained in Paragraph 117 of the Complaint.

118.      Boulben denies knowledge or information sufficient to form a belief as to the truth of the

allegations contained in Paragraph 118 of the Complaint.

119.      Boulben denies knowledge or information sufficient to form a belief as to the truth of the

allegations contained in Paragraph 119 of the Complaint.

120.      Boulben denies knowledge or information sufficient to form a belief as to the truth of the

allegations contained in Paragraph 120 of the Complaint.

121.      Boulben denies knowledge or information sufficient to form a belief as to the truth of the

allegations contained in Paragraph 121 of the Complaint.

122.      Boulben denies knowledge or information sufficient to form a belief as to the truth of the

allegations contained in Paragraph 122 of the Complaint.

123.      Boulben denies knowledge or information sufficient to form a belief as to the truth of the

allegations contained in Paragraph 123 of the Complaint.

124.      Boulben denies knowledge or information sufficient to form a belief as to the truth of the

allegations contained in Paragraph 124 of the Complaint.

125.      Boulben denies knowledge or information sufficient to form a belief as to the truth of the

allegations contained in Paragraph 125 of the Complaint.

126.      Boulben denies knowledge or information sufficient to form a belief as to the truth of the

allegations contained in Paragraph 126 of the Complaint.

Case 2:24-cv-02439-BMC   Document 1-4   Filed 04/01/24   Page 16 of 39 PageID #: 50

## SIXTH CAUSE OF ACTION

127.     In response to Paragraph 127 of the Complaint, Boulben repeats and realleges her responses to Paragraphs 1-126.

128.     Boulben denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 128 of the Complaint.

129.     Boulben denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 129 of the Complaint.

130.     Boulben denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 130 of the Complaint.

131.     Boulben denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 131 of the Complaint.

132.     Boulben denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 132 of the Complaint.

133.     Boulben denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 133 of the Complaint.

## SEVENTH CAUSE OF ACTION

134.     In response to Paragraph 134 of the Complaint, Boulben repeats and realleges her responses to Paragraphs 1-133.

135.     Boulben denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 135 of the Complaint.

136.     Boulben denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 136 of the Complaint.

137.    Boulben denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 137 of the Complaint.

138.    Boulben denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 138 of the Complaint.

139.    Boulben denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 139 of the Complaint.

140.    Boulben denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 140 of the Complaint.

## EIGHTH CAUSE OF ACTION

141.    In response to Paragraph 141 of the Complaint, Boulben repeats and realleges her responses to Paragraphs 1-140.

142.    Boulben denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 142 of the Complaint.

143.    Boulben denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 143 of the Complaint.

144.    Boulben denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 144 of the Complaint.

145.    Boulben denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 145 of the Complaint.

146.    Boulben denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 146 of the Complaint.

147.    Boulben denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 147 of the Complaint.

148.    Boulben denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 148 of the Complaint.

149.    Boulben denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 149 of the Complaint.

150.    Boulben denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 150 of the Complaint.

151.    Boulben denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 151 of the Complaint.

152.    Boulben denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 152 of the Complaint.

153.    Boulben denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 153 of the Complaint.

154.    Boulben denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 154 of the Complaint.

155.    Boulben denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 155 of the Complaint.

## AFFIRMATIVE DEFENSES

### FIRST AFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

The Complaint is barred, in whole or in part, by the doctrines of laches, estoppel, waiver, and/or acquiescence.

Case 2:24-cv-02439-BMC    Document 1-4    Filed 04/01/24    Page 19 of 39 PageID #: 53

## THIRD AFFIRMATIVE DEFENSE

Kahlon is not entitled to any damages. To the extent he nonetheless seeks the same, his claims are barred, in whole or in part, because he has failed to mitigate his purported damages and the requested damages are unconstitutionally excessive and disproportionate.

## FOURTH AFFIRMATIVE DEFENSE

Punitive damages are barred, in whole or in part.

## FIFTH AFFIRMATIVE DEFENSE

The statutes that give rise to Kahlon's causes of action, in whole or in part, do not provide a private right of action against Boulben.

## SIXTH AFFIRMATIVE DEFENSE

Kahlon's claims are barred, in whole or in part, by the doctrine of unclean hands.

## SEVENTH AFFIRMATIVE DEFENSE

The Statutes that give rise to Kahlon's causes of action do not provide for compensatory damages and/or attorney's fees against Boulben.

## DEFENDANT/COUNTERCLAIM-PLAINTIFF'S COUNTERCLAIM FOR CIVIL SEXUAL ASSAULT AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Defendant/Counterclaim-Plaintiff Céline Boulben repeats, realleges, and incorporates each of the following allegations, averments, responses, denials, and affirmative defenses set form in Paragraphs 1-75 of the Verified Answer to the Verified Complaint as if fully set forth herein and further alleges the following against Plaintiff/Counterclaim-Defendant Yossef Kahlon on knowledge as to her own acts and otherwise upon information and belief.

INDEX NO. 603545/2024
RECEIVED NYSCEF: 04/01/2024

Case 2:24-cv-02439-BMC    Document 1-4    Filed 04/01/24    Page 20 of 39 PageID #: 54

## PRELIMINARY STATEMENT

1.      Boulben, an ambitious violinist and music teacher has enjoyed a long and successful career in the performance arts arena. When she is not performing in a professional orchestra or in a musical theatre production, she spends her time teaching music.

2.      Boulben's life took a dramatic turn when the COVID-19 pandemic shut down music performances and in-person teaching opportunities, leaving her in dire financial straits.

3.      Desperate, her friend and fellow musician introduced her to the website seeking.com, a service with millions of users that matches women to men looking to date in exchange for financial compensation.

4.      In January 2021, she met Kahlon through seeking.com for what she believed would be a first date and a nice lunch.

5.      Instead, Kahlon tied Boulben up in his home and violently sexual assaulted and raped her for hours, including handcuffing her hands and dragging her down the stairs to his basement, choking her until nearly losing consciousness, having sex with her repeatedly without her consent, and painfully whipping and beating her.

6.      Boulben thought she was going to die that day in Kahlon's basement.

7.      After the rape, Boulben sought medical care, completed a rape kit, and filed a police report, but it took months for the NYPD to commence a proper investigation.

8.      Unfortunately, a jury found that the prosecution did not meet its burden of proof beyond a reasonable doubt that Kahlon acted without Boulben's consent.

9.      Beginning on January 25, 2021, and continuing through the present, Kahlon has waged an unceasing, relentless public war against Boulben that amounts to a continuous campaign of malicious behavior, extortion, harassment, and intimidation against her. The

19

extreme and outrageous actions taken by Kahlon exceeded all bounds of decency and were intended to cause Boulben to suffer extreme emotional distress.

10.     Most recently, Kahlon filed an action for malicious prosecution and several other inflammatory and false allegations against Boulben to punish her for reporting the rape.

11.     Shockingly, Kahlon wrote in his filings that he video recorded his rape of Boulben without her knowledge or consent. This recording was never provided to the police or introduced during the criminal trial and would obviously prove his culpability.

12.     Kahlon's actions in recording Boulben without her consent and withholding that information until after the criminal trial were intended to cause, and indeed have caused, Boulben severe emotional distress including anxiety, stress, depression, mental anguish, and the physical effects therefrom.

## JURISDICTION AND VENUE

13.     Jurisdiction is proper pursuant to CPLR § 301 et seq.

14.     Venue for this action is proper in the County of Nassau pursuant to CPLR §503 in that a substantial part of the events or omissions giving rise to the claim occurred in this County.

15.     Jurisdiction is proper in the United States District Court pursuant to 28 U.S.C. §1331 because the alleged civil action arises under the laws of the United States, which constitutes federal question jurisdiction. Moreover, the United States District Court, within its discretion, may exercise supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

16.     Venue is proper in the Eastern District of New York pursuant to 29 U.S.C. §1391(b)(2) as it is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

Case 2:24-cv-02439-BMC    Document 1-4    Filed 04/01/24    Page 22 of 39 PageID #: 56

## **THE PARTIES**

17.     Defendant/Counter-Claim Plaintiff Celine Boulben is a 37-year-old woman and professional violinist and music instructor who is a resident and domiciliary of the State of New York.

18.     Plaintiff/Counter-Claim Defendant Yossef Kahlon is an affluent entrepreneur and financier who is a resident and domiciliary of the State of New York. Kahlon's primary residence is located at 9 Stream Ct, Kings Point, NY 11023.

## **FACTUAL ALLEGATIONS**

### **Boulben Joins Seeking.com**

19.     Seeking.com touts itself as the "largest luxury dating site" with 4.6 million members worldwide where "beautiful women" can be paired with financially "successful men."[1]

20.     In the Summer of 2020, Boulben lost all opportunities to perform at concerts and teach music lessons to her adolescent students due to the pandemic. She was in financial straits and desperate to earn money.

21.     Boulben began regularly using seeking.com and matched with various men, some of which she agreed to meet in-person for a date. Typically, once matched with a man, Boulben would chat with them via the website's messaging platform, and once she felt comfortable, she would offer her Google voice number, which she used to ensure her safety and identity as necessary.

22.     Boulben had multiple in-person meetings with men she matched with on seeking.com, all of whom treated her with respect.

---

[1] https://www.seeking.com/about-us.

21

Case 2:24-cv-02439-BMC    Document 1-4    Filed 04/01/24    Page 23 of 39 PageID #: 57

23.     While public opinion has stigmatized and associated Seeking.com as a mode of
promoting prostitution, Boulben's dates on numerous occasions were either strictly platonic or
not intimate. Namely, she met men who solely sought companionship such as watching a movie
together or enjoying a pleasant conversation over dinner and wine.

**Seeking.com Matches Boulben and Kahlon, Boulben Agrees to Meet for a Date**

24.     On January 19, 2021, Boulben matched with Kahlon.

25.     Kahlon was a member of the dating website Seeking.com under the username
"Synqos."

26.     According to Kahlon's profile, he advertised: he sought women between the ages
of 20-32; his net worth was $10 million; his annual income was in excess of $1 million; his body
type was athletic; he drank socially; he was a non-smoker; he was 6 foot 3 inches tall; he worked
in the finance industry; he sought an open relationship; and preferred not to disclose his familial
status. His profile listed his "primary location" as "New York, New York," his "secondary
location" as "Atlanta, Georgia," and his "other location" as "Miami Beach, Florida."

27.     Boulben began chatting with Kahlon via the website's messaging platform. At
Kahlon's request, Boulben gave him access to view her pictures on her profile.

28.     A few days later, on January 21, Boulben and Kahlon exchanged phone numbers.
Boulben provided Kahlon with the Google voice number she used when she matched with a
male user and was interested in further conversation offline—since she did not feel comfortable
giving her personal phone number.

29.     Over the next few days, Boulben and Kahlon engaged in light and jovial
conversations every day. For example, Kahlon gave Boulben a list of movie recommendations
and said he was interested in learning to play an instrument like her one day.

30.     At no point in their messaging did Kahlon mention sex or his interest in sexual violence.

31.     Their connection grew over several days of conversation, and Kahlon eventually asked Boulben if she would meet him in-person for a date. Boulben, still a little nervous, requested a video call first.

32.     On January 25, Boulben and Kahlon met over video, and Kahlon made Boulben feel comfortable and safe. At the time, Kahlon seemed kind and funny. Kahlon insisted Boulben come over to his home on Long Island, offered to cook her lunch and even told her to bring her violin so that she could play music for him. Boulben expressed her hesitation to be alone in his home, and proposed they meet for coffee in the city instead.

33.     Kahlon insisted Boulben come to his Long Island home. Boulben replied and told him she needed time to think about it. Kahlon abruptly stated: "Don't think; there is no time to think," and begged for her home address to arrange an Uber to pick her up at his expense. Given that it was still the height of the pandemic, vaccines were not yet available to the public, and it was winter therefore too cold to be outside, it made sense to meet at Kahlon's house.

34.     Although she was still hesitant, Boulben felt as if their conversations over the last few days made him trustworthy and she agreed to go to his Long Island home.

35.     That afternoon, Boulben got in the Uber for the 40-minute drive to Kahlon's secluded estate. Kahlon's long Island home is a 5,408 square foot house that sits on a 1.44-acre lot.

36.     Boulben approached the door and rang the doorbell a few times. She had to call Kahlon when no one answered. He told her the door was unlocked and to come in.

Case 2:24-cv-02439-BMC    Document 1-4    Filed 04/01/24    Page 25 of 39 PageID #: 59

37.     As Boulben entered she recognized the statutes in the vestibule from the photos Kahlon previously shared with her, which provided her with a sense of security.

38.     Boulben walked into the kitchen where she laid eyes on Kahlon for the first time, he was cooking lunch for her.

39.     He greeted her warmly and invited her to tour his home herself before they sat down at the kitchen table. Ultimately, Boulben decided not to take a tour because she found it unusual that Kahlon, as the host, did not personally offer to give her a tour and instead invited her to look around herself.

40.     Kahlon served a gourmet lunch of chicken and vegetables and poured a drink of tequila for himself and a glass of champagne for Boulben from an open bottle he grabbed from the refrigerator.

41.     As they dined, the conversation was light. Kahlon told Boulben about the women he had previously meet on Seeking.com and his preference for dancers from Juilliard. Namely, he expressed that he liked to watch them dance.

42.     Kahlon seemed a little odd but completely harmless at that point, much like Boulben's other dates on Seeking.com.

43.     As they continued eating, Kahlon casually made a stray remark that he liked submissive women and how they were "actually the strongest." Boulben was taken aback but decided to shrug the comment off as just awkwardness.

44.     After Kahlon and Boulben finished eating, he suggested Boulben go upstairs with him to his bedroom.

45.     Kahlon had not previously mentioned the topic of sex, and it was important for Boulben to clarify what his expectations were. In Boulben's experience on Seeking.com, there

was absolutely no requirement of intimacy, and she only intended to enjoy Kahlon's company and his hospitality while hoping she would receive some financial compensation for her companionship.

46. Without any mention of intimacy by Boulben, Kahlon asserted: "intimacy or not, I will give you money."

47. This put her at ease, and she believed that she would not be forced or coerced into doing anything against her will. Up to this point, Kahlon had displayed nothing but kindness and respect. She followed Kahlon upstairs.

**Kahlon Subjects Boulben to a Series of Violent Sexual Assaults and Rape**

48. Kahlon's bedroom was a large well-lit room with a mirror in one corner behind a king-sized bed, an accent chair and small writing table in the corner directly across from the mirror, and a tv mounted on the wall in front of the bed. There was the entrance door and another door which led to either another room or a closet.

49. Once Boulben and Kahlon entered the bedroom, he instructed Boulben to sit on the bed and take off her shoes, which she did. Kahlon sat beside Boulben on the bed and stated: "let me show you something."

50. Kahlon then pulled out his phone and showed Boulben multiple sexually explicit pictures of naked women engaging in submissive bondage, discipline, sadism, and masochism ("BDSM") positions. Three of the pictures included a kneeling woman in a cage, another woman with a white hood over her head with a hole at her mouth, and another woman with visible bruises on her body. He did not provide an explanation as to who these women were, how he obtained these photos, or his intention in showing the photos to Boulben.

51.     While she was aware of BDSM practices from popular culture, she had never experienced it, nor did she have a desire to participate. Although she never read or watched the popular books or movies "Fifty Shades of Grey," she was generally aware of BDSM practices as a hot topic item discussed in mainstream media.[2] Nevertheless, she had reservations towards BDSM practices due to its violent undertones.

52.     Boulben was palpably terrified at the sight of these photos. As the fear set in, she realized she had left her purse with her phone downstairs in the kitchen. She could not see any landline or other phone she could use in the bedroom. She felt trapped.

53.     Despite her discomfort with Kahlon's suggestion, Kahlon continued to coerce Boulben into acquiescing to his form of sadistic and violent intimacy.

54.     Boulben knew this was turning into a dangerous situation, it seemed like Kahlon would do whatever he wanted regardless of what she said. She thought if she agreed to sex but with nonviolent boundaries, she was comfortable with, she could leave safely.

55.     She told Kahlon, "I'm okay to explore but no marks" –indicating that she did not want to be hurt or have any bruising or cuts on her body.

56.     Kahlon's demeanor shifted as though he was in a furious rage that she was not giving him everything he wanted. Disregarding her, he firmly stated: "Yes, marks!"

57.     Kahlon stormed towards a closet and grabbed a large white fabric bag, which Boulben later learned was full of his BDSM accessories. Meanwhile, Boulben, frozen in fear, remained seated on the edge of the bed.

---

[2] Jessica Firger, *With "Fifty Shades of Grey," BDSM goes mainstream*, (February 13, 2015), https://www.cbsnews.com/news/fifty-shades-of-grey-bdsm-goes-mainstream/.

58.     Kahlon stood over Boulben and reached his hand behind Boulben's neck, violently pushed her down on her hands and knees and aggressively demanded: "Lick my shoes!"

59.     Boulben was utterly horrified and in complete shock. She attempted to resist as he pressed her face against his shoes and told him "I won't lick your shoes." Her plan backfired, but Kahlon became further enraged and repeatedly pushed her head towards his shoes commanding: "Lick my shoes! Lick my shoes!" Boulben continued to resist.

60.     It was futile.

61.     Kahlon violently clasped a chunk of Boulben's hair in his hand, picked her up, pushed her back on the bed to lay faceup, and slapped her in the face. She tried to get up, but he again grabbed her hair and forced her head back to lay her down on the bed.

62.     Boulben, a petite woman, at the time weighed approximately 114 pounds standing at 5 foot 5 inches tall. She was overpowered by the six-foot tall athletic Kahlon; she had no choice but to succumb to his will.

63.     Kahlon placed metal handcuffs on Boulben's wrists and shoved a white hood with a hole at the mouth over Boulben's head. Boulben pleaded for Kahlon to stop, but he would not listen.

64.     Kahlon then grabbed Boulben's handcuffed wrists and dragged her forward off the bed by the center of the handcuffs and down a flight of stairs. Boulben, petrified, thought, "This is how I am going to die." She felt as if she was having an out-of-body experience.

65.     In fear for her life, Boulben kept her eyes wide open through the cloth hood hoping to see as he led her to a lower level.

27

INDEX NO. 603545/2024
Case 2:24-cv-02439-BMC    Document 1-4    Filed 04/01/24    Page 29 of 39 PageID #: 63
RECEIVED NYSCEF: 04/01/2024

66.    Once down the flight of stairs, Kahlon forced Boulben to the right of the stairs between what she could identify as two beams.

67.    She would later learn, on the ceiling on each beam was a metal hook. Kahlon then tied up her handcuffed hands above her head with a long rope and wrapped the rope up her crotch in between her legs in what felt like a harness. He then tied her legs together in cellophane—completely immobilizing her. Boulben began to feel her body being slightly suspended off the ground as he pulled the ropes through the hooks to string her up.

68.    Through the hood Boulben saw Kahlon walk towards the bag of BDSM accessories and pull something out. He came towards her and tied a dog collar around her neck.

69.    Boulben again pled and begged that she needed boundaries, but Kahlon ignored her.

70.    At this point, Boulben realized she was only in her t-shirt and panties. She could not even remember when Kahlon took off her pants.

71.    Once tied up to Kahlon's satisfaction, he seemingly stepped back to take in the visual and gaze upon Boulben's tied up body. With her vision still obstructed by the hood over her head, she heard Kahlon pridefully say: "You should see how beautiful you look like this," and told Boulben, "You are my puppy."

72.    Through the hood, Boulben observed Kahlon's silhouette take out a whip from his bag of sadistic toys. As Kahlon approached Boulben with the whip, she screamed as loud as she could: "No, no, no!"

73.    Kahlon seemed turned on by her resistance, ignored her "nos" and whipped her— hard—along her backside. In agonizing pain, Boulben shrieked, she began to breathe heavily and

Case 2:24-cv-02439-BMC   Document 1-4   Filed 04/01/24   Page 30 of 39 PageID #: 64

attempted to squirm her way out of the bondage. She managed to loosen her handcuffs, but that only made the rope wrapped between her legs dig into her groin deeper, which was excruciating.

74. Kahlon expressed his surprise that the handcuffs became so loose and immediately tightened the grip. Boulben pleaded: "My wrists, I need my wrists, I am a violinist" terrified that he would injure her so badly she would not be able to play.

75. Again, she begged him to stop, but he did not.

76. Boulben does not know how long she was tied up. It felt like an eternity.

77. Eventually, he unhooked Boulben from the beams and uncuffed her wrists.

78. Boulben then heard someone enter the house on the level above and the sound of a male's voice. She sat down on the couch next to the beams, traumatized and catatonic. She was unable to speak, move, or think.

79. Kahlon led Boulben to an enclosed "cage-like" area below the stairs. He pointed at the area and threatened Boulben: "This is where you will spend the night," and went upstairs to meet the man.

80. Boulben quietly went back to the couch. She contemplated escaping but had no pants on. Her shoes were in Kahlon's bedroom and her phone and purse were in the kitchen. She was on a huge estate in a remote area in the dead of winter during the pandemic. She thought there was no way she could find her way home.

81. And now there was another strange man upstairs. She had no idea why he was there or whether he would join Kahlon in the violent sexual assault.

82. She sat there commiserating over the profound traumatic events, numb, she had lost her concept of time. Boulben removed the hood and began unwrapping the cellophane wrapped around her legs.

29

83.     15 minutes later, Kahlon reemerged and jokingly stated: "I thought you would run away." In response, Boulben expressed that she wanted to leave and that she needed her phone and her clothes.

84.     Kahlon then briefly went back upstairs. When Kahlon returned downstairs, his rage and aggressive demeanor dissipated, and he was sweet and gentle. He brought Boulben's bag with her phone and a bottle of open champagne then poured her a glass.

85.     Boulben tried taking a sip of the champagne hoping it would help, but she was so shaken up.

86.     Boulben's memory from this point on is only in bits and pieces—she does not know if the gaps in her memory are a response to the traumatic events are or due to something that Kahlon served her. The following is what she does remember—which does not account for the several hours that she remained at his house.

87. At some point Boulben and Kahlon unclothed and were sitting naked on the couch. Pulling Boulben's hair, repeatedly slapping her face and shaking her head with his hands, Kahlon stated: "You will become my main whore." He forced her to lay down and inserted multiple sex toys into Boulben's vagina.

88. Kahlon then pulled out what looked like a large a handheld machine in the shape of a gun with a dildo attached. The machine was loud and set the dildo in a fast-thrusting motion. While laying down, anticipating the pain, Boulben visibly cringed and tensed up. He inserted the handheld toy deeply into her vagina. Visibly in pain, Boulben tried to inch up on her shoulders away from Kahlon to prevent further penetration, but Kahlon disregarded her cues and body language. He then proceeded to twist Boulben's nipples with so much pressure that Boulben yelped out in pain. He repeatedly twisted her nipples despite her screams of pain and displeasure.

Case 2:24-cv-02439-BMC   Document 1-4   Filed 04/01/24   Page 32 of 39 PageID #: 66

89.     While sitting next to each other on the couch, Kahlon then grabbed Boulben's head in his hands and forced her mouth open by pinching her cheeks with his fingers and began to spit in her mouth while demanding her to swallow it. He repeatedly spit in her mouth, each time with increased hate and contempt.

90.     Boulben screamed again and tried to fight him off with her hands but was unable to. To force her into his desired position, he grabbed her by the neck, chocked her and forced her torso to the floor while the bottom of her body was on the couch. Gasping for air, Boulben began to feel the air leaving her body and started to convulse. The pressure of his grip around her neck did not let up.

91.     Unsatisfied with Boulben's resistance he instructed her to lay face down across his lap, pulled out his belt and whipped her as punishment for her "bad behavior."

92.     Boulben could either comply or die. She did not want to die and did what she had to do.

93.     Kahlon then instructed Boulben to lay down on the coffee table in front of the couch and she did. Again, he thrusted the handheld machine with the pulsating dildo attached in her vagina while she laid on the table. She again tried to wiggle from it, but Kahlon moved the dildo towards her anus. Boulben desperately cried and begged him not to penetrate her anus. For the first time, Kahlon stopped. However, his alternative proposition was far more humiliating: he commanded her to clean the rim of his anus with her tongue.

94.     Immediately, Boulben adamantly said no. Kahlon continued to insist despite her refusal and grabbed her by her hair and forced her down on her knees between his legs to lick his anus with her tongue. He kept pushing her, but the smell repulsed her, and she was fighting the urge to vomit out of fear it would further enrage him. She did what he asked.

31

INDEX NO. 603545/2024
RECEIVED NYSCEF: 04/01/2024

95.     While still on her knees Kahlon forced Boulben to perform oral sex on him. She complied.

96.     Kahlon demanded Boulben sit on his penis. Although acquiescing solely to ensure her safety, Boulben mentioned the use of a condom. Kahlon abruptly replied: "no condoms."

97.     Boulben then straddled Kahlon and while penetrating her tells her he wants her to have his baby. He then demanded that Boulben say aloud: "I want a baby from you," which she did. However, Kahlon was not convinced and commanded her "to say it better" and she did, anticipating that upon ejaculation, her nightmare would end, and she would return home safely.

98.     Kahlon, in an attempt to reach his climax began to make weird noises and repeatedly said: "I am coming!"

99.     While still penetrating her, Kahlon told Boulben he "came inside" of her four times—as though he was boasting, and she should be impressed with his stamina.[3]

100.    While still penetrating Boulben, Kahlon blurted out "I love you" several times. Boulben answered "I love you" hoping he would achieve climax quickly to bring an end to a tormenting day.

101.    After committing his vicious cycle of sexual assaults and rape, he forced Boulben into the shower in the basement. He provided her with soap and towels and instructed her to step into the walk-in shower. Boulben complied. Once she walked into the shower, Kahlon stood outside of the shower with the shower door open and urinated on her body. Boulben could only focus on scrubbing her body to remove all traces of the traumatic events.

---

[3]When she showered, Boulben was terrified that she would get pregnant from Kahlon ejaculating inside her, and so cleaned out the inside of her vagina with soap. However, she was surprised to find that there was no fluid near her vagina. She later realized he lied about ejaculating to induce her to clean the inside of her vagina and remove biological evidence of the rapes.

Case 2:24-cv-02439-BMC    Document 1-4    Filed 04/01/24    Page 34 of 39 PageID #: 68

102.     At some point while in the shower, Boulben heard movement upstairs. Kahlon then left Boulben in the basement bathroom and went upstairs. Boulben believes Kahlon went to converse with the man whom she overheard earlier.

103.     Boulben got dressed quickly. At some point, Kahlon offered Boulben to stay longer or spend the night, but Boulben had absolutely no intention of remaining in his presence or in his home a moment longer.

104.     When she looked at the time, Boulben realized the series of sexual assaults, rape, and violence that took place in the basement lasted approximately four hours.

105.     Boulben and Kahlon went back upstairs to his room so that she could put on her shoes. Once in his room, she realized the television was turned on to what appeared to be a live stream of the basement where she was just violently raped and sexually assaulted.

106.     Kahlon ordered Boulben an Uber back to her home and gave her the cash that was in his wallet, $420. While Boulben would not have endured the most terrifying and agonizing experience of her entire life for any amount of money, she was mortified, degraded, and reduced to a lesser version of herself for an amount of money that would not even cover a few weeks of therapy.

107.     Kahlon offered to give her more money but said he did not have any more cash and offered to send the remainder in another way. Boulben proposed an electronic payment via Zelle, Venmo, or Cashapp, clearly indicating that the experience would be enjoyable at the right price. However, Kahlon then suggested Boulben send him her bank wire information, which she provided. He kissed her on the forehead and Boulben left.

108.     Boulben got in the Uber, went home, and was never in contact with Kahlon after that day.

**Boulben Desperately Seeks Justice for Kahlon's Acts, but Is Ultimately Failed by the Criminal Justice System**

109.     Still in shock and unable to rationalize the series of events that occurred, Boulben texted three of her friends while in the Uber on her way home.

110.     After replaying the nights events to her friends, Boulben began to realize that she was raped and that she should take action.

111.     On January 26, Boulben went to CityMD, who directed her to the emergency room, where they performed a rape kit.

112.     On January 27, Boulben filed a police report at the Nassau County Police Department. She hoped to seek justice for Kahlon's violent rape.[4]

113.     Instead, Boulben was met with contempt and victim shaming. Luis A. Salazar, the male detective told Boulben "next time she should just tell the guy what you want"—clearly not understanding the gravity of the situation or simply choosing to disregard it. Salazar also failed to collect Boulben's clothes from the day of the assault or pick up her rape kit from the hospital—crucial evidence of Boulben's case.

114.     For two months, Boulben relentlessly sought to hold Kahlon accountable for his actions and tried to seek a new detective to move her report forward. Finally, Aileen Newbold, a female detective was assigned, and the State of New York proceeded to press charges against Kahlon.

115.      Boulben testified in front of a grand jury on June 3, 2021, and Yossef was arrested on August 19. He paid bail, which was set at $250,000 cash, $500,000 bond, and $1 million partially secured bond.

---

[4] At the time, Boulben did not pursue civil claims against Kahlon and only wanted to focus on criminal liability.

116.     The criminal trial occurred in September 2023, but the jury found that the State of New York did not meet its burden of proof beyond a reasonable doubt that Kahlon assaulted Boulben without her consent.

117.     At no point during the criminal trial did Kahlon reveal that he had a videotape of him having sex with Boulben. At no time did Kahlon request Boulben's consent to film her.

118.     Indeed, it was not until Boulben read Kahlon's February 28, 2024, Complaint where he alleges "Every moment of the sexual encounter between Ms. Boulben and Mr. Kahlon was video recorded on Mr. Kahlon's home video surveillance system" that she learned Kahlon recorded him raping her.

119.     Learning that her rape is saved on videotape and in Kahlon's possession for his own perverted enjoyment has caused Boulben's significant emotional distress. Boulben also questions whether Kahlon shared the video with anyone else, but suspects that he shared with her photographs of women engaging in BDSM with him during their meeting.

120.     On February 28, 2024, Kahlon gave a live teleconference on News 12 Long Island, during which he publicly accused Boulben of falsely accusing him of rape and of conspiring with the police department and District Attorney's office to bring these rape claims against him.

121.     Boulben's claims are not false, and Kahlon intentionally conflates his acquittal as an absolution of his guilt. In fact, the reality is he is a wealthy man with resources who chose to file the instant matter solely to spin the narrative in his favor and further taint Boulben's name before she had an opportunity to seek justice in civil court.

### **FIRST CAUSE OF ACTION:**
**Assault and Battery**

122.     Boulben repeats and realleges all facts set forth above.

123.    Kahlon intentionally, and without her consent, attacked Boulben to exercise power and control over her. Kahlon's physical contact with Boulben was offensive and harmful.

124.    As a result, Boulben has suffered emotional and psychological distress, physical injury, mental anguish, loss of enjoyment of life, humiliation, embarrassment, pain and suffering, and economic damages.

In addition to being intentional and deliberate, Boulben's sexual assault and battery happened in the character of outrage and association with crime, entitling Boulben to an award of punitive damages.

125.    Boulben is entitled to an award of compensatory damages, punitive damages, and costs.

126.    Boulben's civil sexual assault claim is not barred pursuant to CPLR 213-c because it meets the elements of an intentional placing of another person in fear of imminent harmful or offensive contact, and intentional wrongful physical sexual contact with another person without consent.

## SECOND CAUSE OF ACTION:
### Intentional Infliction of Emotional Distress

127.    Boulben realleges and incorporates by reference each of the prior paragraphs.

128.    Kahlon has engaged in a continuous pattern of malicious behavior and extreme conduct against Boulben by videorecording his rape of Boulben without her consent and denying its existence until after the criminal trial verdict. Kahlon's campaign of lies, extortion, disparagement, harassment, intimidation, and maliciousness directed at Boulben is beyond the bounds of decency and not tolerated in civilized society.

129.     At all stages of Kahlon's campaign, he has taken extreme and personal action against Boulben in an intentional effort to increase her emotional distress and general suffering.

130.     There exists a causal connection between the aforementioned conduct and the injury and damages suffered by Boulben.

131.     As a result of Kahlon's effort to target and harass Boulben, she has suffered, and continues to suffer, severe and unabating emotional distress for which she has sought treatment.

## DEMAND FOR RELIEF

WHEREFORE, Defendant/Counterclaim-Plaintiff Céline Boulben, respectfully requests that the Court grant the following relief:

a) awarding Counterclaim-Plaintiff compensatory damages;

b) awarding Counterclaim-Plaintiff punitive damages;

c) awarding Counterclaim-Plaintiff attorney's fees;

d) awarding Counterclaim-Plaintiff costs; and

e) such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to CPLR 4102(a), Boulben demands a trial by jury.

Dated: Brooklyn, New York
          April 1, 2024                          Respectfully submitted,

                                                 Ingrid M. Fernandez
                                                 Hilary J. Orzick
                                                 Crumiller P.C.
                                                 16 Court St, Ste 2500
                                                 Brooklyn, NY 11241
                                                 (212) 390-8480
                                                 ingrid@crumiller.com
                                                 hilary@crumiller.com

37

Case 2:24-cv-02439-BMC    Document 1-4    Filed 04/01/24    Page 39 of 39 PageID #: 73

*Attorneys for Defendant-Counterclaim-Plaintiff Céline Boulben*