

666 OLD COUNTRY ROAD, SUITE 700
GARDEN CITY, NEW YORK 11530
516.745.1500 • [F] 516.745.1245
WWW.BARKETEPSTEIN.COM

ADDITIONAL OFFICES:
EMPIRE STATE BUILDING, NY, NEW YORK
HUNTINGTON, NEW YORK
ALL MAIL TO GARDEN CITY ADDRESS

December 18, 2024

**<u>Via ECF</u>**
Hon. Brian M. Cogan
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:   *Kahlon v. County of Nassau* et al.
             Case No.  24-CV-2439

Dear Judge Cogan,

      This office represents Mr. Kahlon in connection with the above-referenced matter. We are writing to respond to the pre-motion letter filed by Celine Boulben through which she contemplates a motion for summary judgment over the pending claims for malicious prosecution and conspiracy. As set forth more fully below, Ms. Boulben's motion would lack merit because it would rely upon basic disputed questions of fact arising out of the parties' sexual activity. In brief, the parties dispute (a) whether Ms. Boulben fabricated her report of non-consent to secure rape charges against Mr. Kahlon, which were ultimately rebuffed at a criminal trial, and (b) whether she created this false narrative in concert with members of Nassau County law enforcement. Because the place to test those disputed factual questions is a trial rather than a motion, we respectfully request that Ms. Boulben's application be denied.

      Celine Boulben met Mr. Kahlon via a website called "Seeking Arrangements." Seeking Arrangements was designed to match wealthy men with younger women in need of financial support who, in turn, offer their time and often their sexual attention in return for money. After being matched through this website, Ms. Boulben exchanged flirtatious emails with Mr. Kahlon, he paid for her to travel to his home, and they cooked and enjoyed pleasant conversation for hours before both agreeing to slip away to his bedroom.

      On the way there, Ms. Boulben made clear that she expected to be paid for her company and Mr. Kahlon assured her that she would. He proceeded to explain to her his sexual preferences, including showing pictures of women in various forms of sexual bondage, and she affirmed that she was willing to engage in exploration—setting up a safe word, "Red," that could be used to cease the sexual activity at any time.

      The parties engaged in consensual sexual activity during which time she never said "Red" or "Stop," and instead during the encounter she drank champagne, expressed enjoyment, and initiated sexual intercourse. Afterward, she engaged in text message conversations with her other clients using light-hearted banter.

At the conclusion of the sexual activity, Mr. Kahlon lived up to his promise to pay Ms. Boulben—offering her $420. She objected to the fee, demanding more. And when he paid for a car to bring her home at her leisure, she got in the car, took off, and then texted him her real name (she had been using a fake), her home address, and her bank account number so that he could wire her additional money to cave to her monetary demands. She then texted her friend, who she had put on emergency-alert in case her target (Mr. Kahlon) had proved to be abusive. But this was not to report a rape or bad experience. "Just a quick message to say I am home!," she said instead. "Let me know about tomorrow, hope to see you."

Ms. Boulben has acknowledged that she never intended to go to the police or seek medical attention, and did so only after having been persuaded by others to do so. And once with medical professionals, she did not claim that she was raped and instead stated that she would not characterize her encounter as a sexual assault at all. She continued this trend when she met with Nassau County Detective Salazar, to whom she never claimed rape, claimed that the boundaries were left ambiguous, and expressed concern that her sexual encounter with Mr. Kahlon could be construed as prostitution. Weeks later, after having met with various MeToo groups and lawyers, she then drastically changed her story in a report to a newly assigned detective—Newbold—to whom she now complained of having been raped. And in the grand jury, she withheld a wide variety of material exculpatory facts—including that she had complained about the amount of money she was paid for her services; that after leaving his home she still texted Mr. Kahlon her real name, address, and bank information; that she had engaged in light-hearted banter with other clients during and shortly after the sexual activity with Mr. Kahlon; and that she never told her "just in case" friend that she had had any problem with Mr. Kahlon whatsoever.

Based upon her claims and testimony, Mr. Kahlon was indicted and had his photograph plastered in *Newsday* above the headline that he was charged with rape and assault. He then fought the charges for more than two years before he was finally acquitted by a jury of his peers.

**I. A Summary Judgment Motion Over the Malicious Prosecution Claim Would Be Meritless.** "While it is true that citizens who furnish information to the police in good faith will not generally be held liable for false arrest when the police exercise independent judgment to arrest a defendant, …. [s]uch an action will lie where the [civilian] 'lacked probable cause for their belief in the plaintiff's culpability." *Weintraub v. Bd. Of Ed.*, 423 F. Supp.2d 38, 55 (E.D.N.Y. 2006) (citing *DeFilippo v. County of Nassau*, 183 A.D.2d 695, 696-97 [2d Dept. 1992]).

That is to say, the dividing line in malicious prosecution cases against civilian complainants is between good and bad faith. "Merely giving false information to the authorities does not constitute initiation of the proceeding" for the sake of malicious prosecution—not, that is, "without an additional allegation or showing that, at the time the information was provided, the defendant knew it to be false, yet still gave it to the police or District Attorney." *Williston v. Jack Resnick & Sons, Inc.*, 177 A.D.3d 822 (2d Dept. 2019). In those cases of bad faith, "the weight of persuasive authority indicates that a complainant who knowingly provides a false account of purported criminal conduct may not shelter in the arresting officer's resulting probable cause defense to defeat a false arrest claim." *Pukhovich v. City of New York*, 2018 WL 4688943, at *12 (E.D.N.Y. 2018).

Ms. Boulben's anticipated motion would be meritless from the start, because this case presents a classic question of fact about whether the rape-complaint she ultimately reported to the police was knowingly false. Of note, Ms. Boulben now denies that she instigated the charges, yet

when "a complainant has knowingly provided false information to the police … [this] has been found to be sufficient to state that the complainant initiated the proceeding by playing an active role in the other party's arrest and prosecution." *Place v. Ciccotelli*, 121 A.D.3d 1378, 1379-80 (3d Dept. 2014). *See also Coscia v. El Jamal*, 156 A.D.3d 861, 863-64 (2d Dept. 2017) (same).

Illustrative of these mechanics is the analysis from *Weintraub*—another matter that involved claims against civilian reporters to police, and a motion by the defense, as here, seeking summary judgment in the civilian's favor. That motion was denied for reasons squarely applicable here: because the "truth of what actually occurred … between [the parties] is disputed," and if "a jury were to believe Weintraub's account, rather than Serrano's, it would reasonably infer that Serrano knew Weintraub had not assaulted her, but nonetheless intended to have him arrested by making false statement to the police." *Weintraub*, 423 F. Supp.2d at 56. The same is true here: because the "truth of what actually occurred … is disputed," and because if "a jury were to believe [Mr. Kahlon's] account rather than [Ms. Boulben's], it would reasonably infer that [she] knew [he] had not assaulted her," this case presents questions for resolution by a jury after trial—not a motion before one.[1]

**II. A Summary Judgment Motion Over the Conspiracy Claim Would Be Meritless.**
"To support a claim against a private party on a §1983 conspiracy theory, a plaintiff must show: (1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Jae Soog Lee v. Law Office of Kim & Bae PC*, 530 Fed. Appx. 9 (2d Cir. 2013). By their very nature, however, "conspiracies are … secretive operations, and may have to be proven by circumstantial, rather than direct, evidence." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999).

Ms. Boulben contemplates a summary judgment argument hinging on the notion that there is not a "shred of evidence that Boulben had an 'agreement' with any state actor, let alone any sort of action 'in concert.'" *See* Boulben Ltr. at 3. But a review of the record proves this allegation is false: multiple waves of evidence existed to demonstrate Ms. Boulben's consents throughout the night; she herself had met with law enforcement and did not claim she had been raped; and then only after weeks of delay, after meeting with third-parties, and after her handlers made contact with higher-level members of the Nassau County Police Department, did she change her story to press allegations of rape. On summary judgment, the Court would have to give Mr. Kahlon the benefit of every reasonable inference over these facts—to "conclude that [his] account … provides sufficient circumstantial evidence of coordination to prove a meeting of the minds," and that the "section 1983 conspiracy claim [thus] presents questions of fact that must go to a jury." *Valleca v. Pangburn*, 2022 WL 2392543, at *5 (N.D.N.Y. 2022) (quoting *Walsh v. City of New York*, 2015 WL 3648370, at *3 [S.D.N.Y. 2016]).

For these reasons, we respectfully request that Ms. Boulben's application be denied.

---

[1] If a jury finds that Ms. Boulben made knowingly false allegations of non-consent to law enforcement, it will find that she acted with malice. *See, e.g., Fortunato v. City of New York*, 63 A.D.3d 880 (2d Dept. 2009) ("malice can be inferred by lack of probable cause").

3

Sincerely,

_____/s/_____
Kevin Kearon
Alexander Klein