

**BARKET**EPSTEIN
BARKET EPSTEIN KEARON ALDEA & LoTurco, LLP

666 OLD COUNTRY ROAD, SUITE 700
GARDEN CITY, NEW YORK 11530
516.745.1500 • [F] 516.745.1245
WWW.BARKETEPSTEIN.COM

ADDITIONAL OFFICES:
EMPIRE STATE BUILDING, NY, NEW YORK
HUNTINGTON, NEW YORK
ALL MAIL TO GARDEN CITY ADDRESS

December 23, 2024

<u>VIA ECF</u>
Hon. Brian M. Cogan
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

     Re:    ***Kahlon v. County of Nassau* et al.**
            **Case No. 24-CV-2439**

Dear Judge Cogan,

This office represents Mr. Kahlon in connection with the above-referenced matter. We are writing to respond to the pre-motion letter filed by Nassau County through which it contemplates a motion for summary judgment over all pending clams against it in this action. As set forth more fully below, this motion should be denied with respect to the state law malicious prosecution claim against Nassau County, and as to all other claims we do not oppose the motion.

As the Nassau County Police Department and Nassau County Attorney's Office learned prior to convening a grand jury to indict Mr. Kahlon, Celine Boulben met Mr. Kahlon via a website called "Seeking Arrangements." Seeking Arrangements, the County learned, was designed to match wealthy men with younger women in need of financial support who, in turn, offer their time and often their sexual attention in return for money. After being matched through this website, Ms. Boulben exchanged flirtatious emails with Mr. Kahlon, he paid for her to travel to his home, and they cooked and enjoyed pleasant conversation for hours before both agreeing to slip away to his bedroom. Immediately prior to their sexual encounter, Ms. Boulben made clear that she expected to be paid for her company and Mr. Kahlon assured her that she would.

At the conclusion of the sexual activity, described in greater detail in response to Ms. Boulben's pre-motion letter, Mr. Kahlon lived up to his promise to pay Ms. Boulben—offering her $420 in cash. As Nassau County knew before convening the grand jury, Ms. Boulben objected to the fee and demanded more money. And when he paid for a car to bring her home at her leisure, she got in the car, took off, and then texted him her real name (she had been using a fake), her home address, and her bank account number so that he could wire her additional money to cave to her monetary demands. Upon arriving home, she texted her friend, whom she had put on emergency-alert in case her target (Mr. Kahlon) had proved to be abusive during the tryst. But this was not to report a rape or bad experience. "Just a quick message to say I am home!," she said instead. "Let me know about tomorrow, hope to see you."

Ms. Boulben has acknowledged that she never intended to go to the police or seek medical attention, and did so only after having been persuaded by others to do so. And once with medical

1

professionals, as law enforcement learned before convening a grand jury, she did not claim that she was raped and instead stated that she would not characterize her encounter as a sexual assault at all. She continued this trend when she met with Nassau County Detective Salazar, to whom she never claimed rape, claimed that the boundaries were left ambiguous, and expressed concern that her sexual encounter with Mr. Kahlon could be construed as prostitution. After this meeting, Detective Salazar opted against bringing criminal charges against Mr. Kahlon.

Weeks later, after having met with various MeToo groups and lawyers, Boulben then drastically changed her story in a report to a newly assigned detective—Newbold—to whom she now complained of having been raped, who knew that one of the reasons why law enforcement previously declined to prosecute Mr. Kahlon was because of a determination that Ms. Boulben had been attempting a "money grab," and who admitted that reopening the case was a function of an entreaty to "higher ups" in her office. And in the grand jury, Ms. Boulben and the assigned prosecutor—ADA Perry—withheld a wide variety of material exculpatory facts, including that she had complained about the amount of money she was paid for her services; that after leaving his home she still texted Mr. Kahlon her real name, address, and bank information; that she had engaged in light-hearted banter with other clients during and shortly after the sexual activity with Mr. Kahlon; and that she never told her "just in case" friend that she had had any problem with Mr. Kahlon whatsoever.

Based upon the newly fabricated charges, Mr. Kahlon was indicted and had his photograph plastered in *Newsday* above the headline that he was charged with rape and assault. He then fought the charges for more than two years before he was finally acquitted by a jury of his peers.

## Discussion

Nassau County makes four general arguments in pursuit of summary judgment practice over Mr. Kahlon's claim for malicious prosecution. It argues that the prosecution was supported by probable cause in light of Ms. Boulben's allegations; that it did not act with malice; that Mr. Kahlon cannot rebut the presumption of probable cause afforded by the grand jury indictment because he has not obtained an order to unseal the grand jury minutes; and that any claims arising from the conduct of a prosecutor is subject to absolute immunity. None of these arguments withstands scrutiny, and the motion for leave to seek summary judgment should be denied.

Under New York law—like federal law—a malicious prosecution claim requires a plaintiff to establish "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Jocks v. Tavernier*, 316 F.3d 128, 136 (2d Cir. 2003). *See also Boyd v. City of New York*, 336 F.3d 72, 75 (2d Cir. 2003) ("the analysis of the state and the federal claims is identical"). Upon establishing these elements through the conduct of a municipal agent, the municipality-employer can be liable under New York law under a theory of *respondeat superior*—regardless of whether the individual officer or prosecutor is a named defendant to the action. *See, e.g., Tardif v. City of New York*, 344 F. Supp.3d 579, 592 (S.D.N.Y. 2018) ("there is no requirement that *respondeat superior* liability be predicated on the conduct of an individual who is named as a defendant in the suit"). *See also Triolo v. Nassau County*, 24 F.4th 98, 110-11 (2d Cir. 2022) (allowing vicarious liability even if agent is individually immune). Rather than who is individually named in the suit, what matters for purposes of vicarious liability is simply whether the wrongdoing party was acting in the scope of employment. *Id.* at 110 (citing "New York law and basic agency principles").

Here, these principles establish that Nassau County's anticipated motion would be meritless on all fronts. Both Detective Newbold and ADA Perry were acting within the scope of their employment for Nassau County when they prized (Me Too) political pressure above what should have been the controlling question: whether there was probable cause to believe that Mr. Kahlon raped Ms. Boulben—which there was not. This absence of probable cause is why there had already been an intake of Ms. Boulben's allegations, an interview of her, and a rejection of her case by the Nassau County Police Department; it is why Ms. Boulben herself never accused Mr. Kahlon of rape in that first intake process; and, contrary to the prospect of a lack of her consent, it is why Ms. Boulben expressed to Nassau County that she was concerned about her own potential responsibility for prostitution. This was not a case of non-consensual sex or rape; it was a case about a sex worker who was unhappy with her fee.

Newbold and Perry knew these and many more highly exculpatory data points yet concocted a plan to surgically remove them from the earshot of grand jurors—who in ignorance thus indicted. Nassau County's analysis thus gets the mechanics backward: the indictment is not proof that a malicious prosecution was lacking; it is an expression of the malicious prosecution's success. *See, e.g., Cabble v. City of New York*, 2010 WL 1222035, at *3 (S.D.N.Y. 2010) ("the grand jury's decision to indict depended largely on the credibility of the complaining witnesses," and "[a]ll of the exculpatory evidence … withheld from the grand jury relates to the credibility of the complaining witnesses," such that "had this information caused the jurors to discredit the witnesses' testimony it is reasonable to believe that the grand jury would not have indicted Plaintiff").[1]

Nassau County cannot escape this logic through resort to immunity or the sealing of grand jury proceedings. First, immunity applies to individual actors and not their employer-municipalities. *Triolo*, 24 F.4th at 110 ("a municipal employer is vicariously liable for the wrongs of its employee, even when the employee is individually immune"). Second, even if immunity were available to employer-municipalities, the conduct of ADA Perry took place in the pre-indictment investigative setting where absolute immunity does not apply. *See, e.g., Buckley v. Fitzsimmons*, 509 U.S. 259, 274 (1993) ("A prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested"). And third, regardless of whether grand jury testimony is presumptively sealed, the grand jury minutes needed for the present action were already produced in criminal court as *Rosario* material. *People v. Delosanto*, 300 A.D.2d 408, 409 (2d Dept. 20020 ("The secrecy of Grand Jury proceedings was not implicated, because the defendant was entitled to the testimony before the witness testified at trial"). They were also the subject of questions and answers during Ms. Boulben's deposition. To the extent that secrecy considerations remain intact at all, then, they would be cured by filing relevant minutes under seal—not by pretending the contents do not exist.

For these reasons, Nassau County's anticipated motion for summary judgment over the pending state law malicious prosecution claim should be denied.

Sincerely,

*/s/*
_____
Kevin Kearon
Alexander Klein

---

[1] If a jury finds that the prosecution was commenced without probable cause, malice will become inferable. *See, e.g., Fortunato v. City of New York*, 63 A.D.3d 880 (2d Dept. 2009) ("malice can be inferred by a lack of probable cause").